IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Beverley Somai and the Fair Housing Center for Rights & Research, | ) ) ) | Case No. 1:19-cv-373 |
| | ) | Judge John R. Adams |
| Plaintiffs, | ) ) | Magistrate Kathleen Burke |
| v. | ) ) | |
| | ) | **PLAINTIFF'S MOTION FOR** |
| City of Bedford, Ohio, | ) | **PRELIMINARY INJUNCTION** |
| Defendant. | ) ) | **AND BRIEF IN SUPPORT** |
| | ) ) ) | **(ORAL ARGUMENT REQUESTED)** |

## MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs respectfully request that this Court issue a preliminary injunction to immediately enjoin the City of Bedford from enforcing its Nuisance Ordinance during the pendency of this litigation. Specifically, Plaintiffs move for injunctive relief with respect to their claims brought under the Ohio Constitution and the First Amendment to the U.S. Constitution, and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

A Memorandum in Support of Plaintiffs' Motion follows.

Respectfully submitted,

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)
Joseph Mead (0091903)
Freda J. Levenson (0045916)
American Civil Liberties Union of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44103
(614) 586-1958

1

ebonham@acluohio.org
attyjmead@gmail.com
flevenson@acluohio.org

Sandra S. Park (pro hac vice)
Linda Morris (pro hac vice)
American Civil Liberties Union
Women's Rights Project
125 Broad St. 18th Floor
New York, NY 10004
(212) 519-7871
spark@aclu.org
lindam@aclu.org

*Counsel for all Plaintiffs*

Sara E. Bird (0096545)
Jennifer E. Sheehe (0084249)
The Legal Aid Society of Cleveland
1223 West Sixth Street
Cleveland, Ohio 44113
Ph. (216) 861-5407 – SEB
Ph. (440) 210-4521 – JES
Fax (216) 861-0704
sara.bird@lasclev.org
jsheehe@lasclev.org

*Counsel for Plaintiff Beverley Somai*

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff Beverley Somai ("Ms. Somai") called the police to report that she felt threatened by a neighbor and to ask for their help. Based solely on her truthful reports of potential criminal activity, Defendant City of Bedford ("the City" or "Bedford") designated Ms. Somai's home as a nuisance and directed her landlord to evict her or otherwise "abate" the nuisance. The City never informed Ms. Somai that it intended to designate her home as a nuisance, nor did the City provide Ms. Somai with any opportunity to challenge the nuisance designation. Ms. Somai now lives in constant fear of eviction and further penalty by the City if she seeks police or emergency assistance in the future.

This bizarre and unconstitutional outcome is the product of Bedford's Nuisance Ordinance, a maliciously-conceived and poorly-drafted law that deprives Bedford residents of their First Amendment right to communicate with law enforcement and their Fourteenth Amendment right to notice and an opportunity to be heard. Under Bedford's Nuisance Ordinance, two or more violations of any law, except for traffic violations, that occur at a property *or* involve someone who lives at a property are grounds for designating the property as a nuisance. These two "violations" do not require a criminal conviction or even probable cause— the trigger is merely when a resident or someone near them calls 911 for any reason, and police or emergency services respond. After two or more such calls, the City discretionarily sends a property owner a letter threatening them with escalating punitive fines ranging from $250 to $1,000 dollars, a lien on the property for unpaid charges, and even potential criminal charges and incarceration. To avoid these consequences, the property owner is directed to "t[ake] all actions

1

necessary to abate the nuisance." Bedford Ord. § 511.12(b)(3). In practice and as contemplated by the Ordinance, *see id.*, "abate[ment]" means evicting the tenant.

When criminal activity does occur at a property, the Ordinance does not distinguish between victim and offender. Thus, residents are often deemed a nuisance even when they are the victims, rather than the perpetrators, of alleged criminal activity. In fact, Bedford most frequently uses the Nuisance Ordinance to penalize victims for reporting potential criminal activity, particularly domestic violence, and seeking police assistance.

A preliminary injunction is necessary to prevent continued enforcement of this unjust and unconstitutional Ordinance, and to vindicate the First and Fourteenth Amendment rights of Bedford residents including Ms. Somai. First, Bedford's Nuisance Ordinance retaliates against Bedford residents like Ms. Somai for exercising their First Amendment right to communicate with law enforcement and seek police assistance. Second, Bedford's Nuisance Ordinance prevents tenants from receiving notice that their homes may be deemed nuisances and explicitly excludes them from ever challenging the nuisance designation or subsequent consequences, in violation of the Fourteenth Amendment right to procedural due process.

Plaintiffs and other Bedford residents face continued, irreparable injury from the ongoing enforcement of the Nuisance Ordinance and its violation of their constitutional rights. Without an injunction against the Ordinance, residents will continue to face eviction, homelessness, and other unjust penalties simply for exercising their First Amendment right to seek government assistance and report criminal activity. And they will face the consequences of being designated a nuisance without even the most basic due process protections of notice or an opportunity to respond.

The Constitution forbids governments from penalizing residents for asking for help, and no one should be forced to choose between their home and their safety. Under a straightforward application of well-established law, Bedford's Nuisance Ordinance is unconstitutional and should be immediately enjoined.

## II. STATEMENT OF FACTS

### A. Bedford's Nuisance Ordinance: Enactment, Amendment, and Enforcement

#### 1. Legislative Background of Bedford's Nuisance Ordinance

In response to Bedford residents' concerns about the changing racial demographics of their town, Bedford first enacted its Nuisance Ordinance in 2005. Bedford Ord. 7702-05 (hereafter "the 2005 Ordinance"); *see also* Bedford City Council Minutes, May 2, 2005. Expressing concern about new Black residents moving into the historically very White town, the Mayor praised the Nuisance Ordinance as a powerful tool of control and exclusion. First Am. Compl. ¶¶ 41-42.

Throughout the years, Bedford expanded and intensified its Nuisance Ordinance. In 2014, the City broadened the Ordinance's scope from enumerating certain nuisances, to include "[*a*]*ny violation*" of local or state law, except traffic violations. Bedford Ord. § 511.12(a)(1) (emphasis added); First Am. Compl. ¶ 56. The City also expanded the places where one could trigger the Ordinance: Now, not only could it be enforced based on activity taking place on a resident's property, but the Ordinance could also be enforced against a resident for *any* alleged violation of law—regardless of where that violation occurred. *Id.* § 511.12(a). In other words, if a Bedford resident allegedly commits a non-traffic violation of local or state law at the grocery store, that violation is then attributed to and associated with their residence.

3

In addition to greatly broadening the scope of the Ordinance, the City increased the civil and criminal penalties for property owners. *Id.* §§ 511.12(b), 511.99; First Am. Compl. ¶ 57. Notably, despite having amended the Ordinance, Bedford has never carved out any exemptions for crime victims or residents seeking police or emergency services, effectively treating them the same way as it treats alleged offenders. *See* First Am. Compl. ¶ 55.

Despite discussions of the legal defects of Bedford's Nuisance Ordinance in the media and by academic researchers, Bedford's City Council amended the Ordinance again in 2017 to ensure that tenants whose homes are deemed nuisances will not receive notice of the nuisance allegations, and will not be permitted to challenge them. Bedford Ord. 9523-17; *see also* Bedford City Council Work Session Minutes, Sept. 5, 2017, at 4 (noting a Bedford City Council member's desire to "have the verbiage cleaned up so the warning letters, billings and/or any assessments would be mailed directly to the property owner; not the tenant" and other city council members not lodging objections).

2. Bedford's Current Nuisance Ordinance and its Enforcement

Bedford's Nuisance Ordinance is among the harshest of such local laws in the country. In its current form, it authorizes the City to designate a property as a "nuisance" for "[a]ny violation" of state or local law, excluding traffic violations. Bedford Ord. § 511.12(a). It also reaches criminal activity that occurs away from the property when the alleged criminal activity merely "involv[es] an offender residing at a property." *Id.*

The Ordinance triggers when a Bedford resident calls for emergency assistance. *See* Declaration of Megan Hatch ("Hatch Decl.") ¶¶ 15, 31. In most instances, it punishes victims of crime and residents seeking police assistance. *Id.* Indeed, nearly half of the nuisance letters sent by Bedford in recent years stemmed from domestic violence incidents. *Id.* ¶¶ 19-21; *see also,*

4

*e.g.,* Ginger Christ, *Nuisance laws penalize residents for 911 call*, THE PLAIN DEALER, Nov. 10, 2017, https://www.cleveland.com/healthfit/2017/11/nuisance_laws_penalize_residen.html. The Ordinance does not require a criminal conviction or any level of substantiation to establish a violation of its provisions; the mere allegation that any law was violated activity is enough to support a "nuisance" designation. *See* Bedford Ord. § 511.12(a); Hatch Decl. ¶ 27; Declaration of Beverley Somai ("Somai Decl"). ¶¶ 3-4.

When the City designates a property as a nuisance, the property owner faces escalating punitive fines ranging from $250 to $1,000 dollars, a lien on the property for any unpaid charges, and even potential criminal charges and incarceration. Bedford Ord. §511.12(b). To avoid these consequences, the property owner is directed to "t[ake] all actions necessary to abate the nuisance," including evicting the tenant. *Id.* § 511.12(b)(3). Accordingly, property owners often evict the tenants at the nuisance-designated properties. Hatch Decl. ¶¶ 39-40; Somai Decl. ¶ 3.

Despite the devastating impact this has on tenants' access to housing, *see* Hatch Decl. ¶¶ 42-43, Bedford's Ordinance deprives tenants of procedural protections and provides very few protections even for property owners.[1] Under the Ordinance, the City is required only to give the property owner—and not the property's tenants or occupants—advance notice that the City intends to enforce its Ordinance against the property. *Id.* § 511.12(b)(2). Additionally, the Ordinance provides only property owners—again, not tenants—with a right to appeal a nuisance designation, which must be filed within 10 days of the mailing or posting of the City's notice of intended enforcement. *Id.* §511.12(b)(2). The jarring absence of procedural protections leaves

---

[1] For example, recent City Council minutes show that the City is aware that the Ordinance's process for owners, which provides for appeal to the Board of Building Standards and Appeals, is improper, as the City has not given this Board the power to hear nuisance appeals. Bedford City Council Work Session Minutes, Feb. 19, 2019, at 6 (noting that "criminal nuisances were on the wrong Board").

tenants at a significant risk for wrongful deprivation of property without any notice or opportunity to be heard. *See* Hatch Decl. ¶¶ 44-45.

### B. Bedford's Enforcement of its Nuisance Ordinance Against Ms. Somai

In October of 2017, Ms. Somai and her son moved into an apartment in Bedford. Shortly after moving in, Ms. Somai discovered that her downstairs neighbor played his television and stereo very loudly at all hours of the day. First Am. Compl. ¶ 111; *See* Somai Decl. ¶ 3. When Ms. Somai reported the issue to her landlord and property manager, they both advised Ms. Somai to contact the police for assistance. First Am. Compl. ¶ 112. Ms. Somai heeded their advice and called the police to report her noisy neighbor. *Id.* ¶ 113. Despite her repeated requests for assistance, the Bedford Police Department failed to issue any citations to Ms. Somai's neighbor, thereby ratifying his behavior because her neighbor knew there would be no consequences for his conduct.

In March of 2018, Ms. Somai's downstairs neighbor began to engage in intimidating and harassing behavior against her and her son. First Am. Compl. ¶ 117. The neighbor, for example, followed Ms. Somai and her son to the grocery store and bus stop, watched them, and lurked outside of their apartment. Ms. Somai contacted the Bedford Police Department to report her neighbor's escalating behavior and sought their protection on several different occasions. Rather than responding, however, the Bedford Police Department advised Ms. Somai to stop calling the police. First Am. Compl. ¶ 121. On December 17, 2018, Ms. Somai made her last call to date to the Bedford Police Department when the neighbor followed her and her son to the grocery store after she picked up her son from the bus stop. First Am. Compl. ¶ 122*.; see* Somai Decl. ¶ 4.

Two days later, on December 19, 2018, the Bedford Police Department mailed a letter to Ms. Somai's landlord to alert her of the calls for assistance and to pressure the landlord to evict

Ms. Somai and her son. First Am. Compl. ¶ 123. Faced with the choice of incurring escalating fines, penalties, and potential criminal charges, the landlord filed an eviction action against Ms. Somai in the Bedford Municipal Court on January 25, 2019. *Id.* at ¶ 126; Somai Decl. ¶ 3.

Ms. Somai, unlike the landlord, was not provided with a copy of the City's letter or given any opportunity to respond, object, or appeal the City's nuisance designation. First Am. Compl. ¶ 124. In fact, she was not aware of the nuisance designation until her landlord gave her a notice to vacate the apartment with the City's December 19, 2018 letter attached. *Id.* at ¶ 125. Afraid of the City's Ordinance and its severe penalties for both her and her landlord, Ms. Somai now fears contacting the police in the future, even in the case of an emergency. For example, as recently as June 14, 2019, an unleashed dog in Ms. Somai's building charged at her and her son, and the property manager told her to call the police—but she could not, out of fear. Somai Decl. ¶ 10. While her landlord dismissed without prejudice the eviction proceedings for the time being, Ms. Somai remains under constant threat that an eviction could be restarted at any moment. Somai Decl. ¶¶ 7, 9, 11.

### C. Bedford's Nuisance Ordinance Continues to Violate Constitutional Rights

The continued threat of Bedford's Nuisance Ordinance imposes a chilling effect on the ability of Ms. Somai and others like her to seek police or emergency assistance due to fear of jeopardizing their housing. Somai Decl. ¶¶ 7-9. The Ordinance also denies tenants in Bedford any notice or opportunity to respond to allegations that they are subject to the Nuisance Ordinance. Ms. Somai continues to fear seeking police or emergency services because of the ongoing threat of the Ordinance's enforcement. Somai Decl. ¶ 9. She remains subject to the Ordinance's penalties upon any additional calls for police assistance to report crimes. Indeed,

7

Ms. Somai has already chosen not to call 911, despite genuine concern for the safety of her and her son. Somai Decl. ¶ 10.

As a result of Bedford's Ordinance and its aggressive enforcement, Ms. Somai's right to free speech and right to petition the government have been and continue to be burdened in violation of the First Amendment to the U.S. and Ohio Constitutions. Similarly, Bedford's Ordinance continues to deny any procedural protections to Ms. Somai, as she did not and will not receive notice from the City or an opportunity to respond to the Ordinance's enforcement. This Court should issue injunctive relief to prevent future harm to Plaintiffs or other Bedford residents who now avoid seeking police or emergency assistance out of fear of compromising their homes.

### III. STANDARD OF REVIEW

In considering whether to grant a motion for a preliminary injunction, this Court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997); *see also Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).

### IV. ARGUMENT

#### A. Plaintiffs Are Likely to Succeed on Their First Amendment Claims.

1. <u>Bedford's Ordinance Unconstitutionally Burdens First Amendment Rights</u>

Bedford's Nuisance Ordinance unconstitutionally penalizes residents when they exercise their protected right to petition the government for redress of grievances. The right to petition is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr.*

8

*Co. v. N.L.R.B*, 536 U.S. 516, 524 (2002) (citation omitted); *see also United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967) (describing the First Amendment right to petition as "among the most precious of the liberties safeguarded by the Bill of Rights. . . . [and] intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press"); *McDonald v. Smith*, 472 U.S. 479, 482 (1985) ("The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression.")

"The Petition Clause protects petitioning of 'all departments of the Government,'" *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (citation omitted), and it "is not limited to petitions lodged under formal procedures," *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 393 (2011). Calling a police department and good-faith reporting of criminal activity falls squarely within the heart of First Amendment protections. *Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000) ("[S]ubmission of complaints and criticisms to nonlegislative and nonjudicial public agencies like a police department constitutes petitioning activity protected by the petition clause."); *accord, e.g.*, *Meyer v. Bd. of Cty. Comm'rs of Harper Cty, Okla.*, 482 F.3d 1232, 1243 (10th Cir. 2007) (holding that filing a criminal complaint with law enforcement officials is an exercise of the First Amendment right to petition); *Forro Precision, Inc. v. Int'l Bus. Machs. Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982) (holding that the right to petition is integral to law enforcement's ability to enforce the law). Courts have held that nuisance ordinances enforced based on requests for police assistance violate the First Amendment. *E.g., Bd. Of Trustees of Vill. of Groton v. Pirro,* 58 N.Y.S.3d 614, 620-21 (N.Y. App. Div. 2017); *Watson v. Maplewood, MO,* No. 4:12-cv-1268 JCH, 2017 WL 4758960, at *5 (E.D. Mo. Oct. 20, 2017); *see also Montagno v. City of Burlington*, No. 2:16-cv-232, 2017 WL 2399456 (D. Vt. 2017).

9

Ms. Somai and other Bedford residents have a First Amendment right to report criminal activity to law enforcement and to seek police assistance without retaliation. Yet Bedford uses its Ordinance to punish such constitutionally protected activity by designating the property as a nuisance, and placing the residents at risk of eviction and homelessness. *See* Hatch Decl. ¶¶ 41-45. For example, because Ms. Somai exercised her constitutionally protected right to file complaints with law enforcement about a threatening neighbor, Bedford used its Ordinance to retaliate against her and try to deter her from doing so in the future. Bedford designated Ms. Somai's apartment as a nuisance, shared the details of her complaints with her landlord, and effectively compelled the landlord to begin eviction proceedings against her. Somai Decl. ¶¶ 7-11; *see* Hatch Decl. ¶¶ 33-38.

Ms. Somai is not alone. There are scores of other examples of Bedford using its Nuisance Ordinance to penalize people for filing good-faith complaints with law enforcement. *See* Hatch Decl. ¶¶ 15-32. For example, in 2018, Bedford sent a nuisance letter after a worried mother called the police to complain that her child was physically assaulted by her child's father, and wanted to press charges against the father for abuse. First Am. Compl. ¶ 74(b). In 2016, Bedford sent a nuisance letter after a man called for an ambulance because he had been shot. Hatch Decl. ¶ 16. And Bedford routinely uses its Ordinance to penalize domestic violence victims, the vast majority of whom are women, for calling the police for assistance with an abusive partner. First Am. Compl ¶ 72; Hatch Decl ¶¶ 19-22. In fact, the primary way that Bedford uses its Ordinance is to retaliate against people for seeking police assistance. First Am. Compl ¶ 5; Hatch Decl. ¶¶ 15, 26, 31.

The residents of Bedford have a constitutional right to file complaints with law enforcement without facing retaliation by the City. And the City's nuisance enforcement does

10

not serve any government interest—in fact evidence suggests it deters crime reporting and neighborhood safety, and harms residents. *See* Hatch Decl. ¶¶ 24-25, 39-44. Because Bedford's Ordinance punishes people for reporting criminal activity and other emergencies to their government, it directly interferes with their First Amendment rights and should be enjoined.

### B. Plaintiffs Are Likely to Prevail on the Merits of their Due Process Claims.

Bedford's Ordinance also denies tenants notice and an opportunity to respond before being designated as a nuisance. "'Procedural due process' at its core requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Bedford's Ordinance specifically denies *both* notice *and* any opportunity to respond to tenants—the very people who bear the brunt of the nuisance designation and who are most likely to have the relevant information to refute the designation. In practice, tenants have rarely received any notice in the past. Hatch Decl. ¶¶ 11, 14, 32, 37-38. And in 2017, Bedford amended the Ordinance to make it clear that only property owners, and not the tenant, can participate in any appeal of a nuisance designation. *See* Bedford Ord. § 511.12(b)(2). As part of that amendment, the City Manager "explained he would like to have the verbiage cleaned up so the warning letters, billings and/or any assessments would be mailed directly to the property owner; not the renter." Bedford City Council Work Session Minutes, Sept. 5, 2017, at 4. Under the Ordinance as amended, the City will never give tenants notice that they are deemed to be a nuisance, and will never give them a chance to rebut the designation.

Bedford's Ordinance operates as it was designed. Hatch Decl. ¶¶ 15, 39-40. Without ever providing any type of notice to Ms. Somai, Bedford designated Ms. Somai's home as a nuisance and directed her landlord to evict her. Even had Ms. Somai somehow learned of the nuisance

11

designation, the Ordinance prohibits her from responding to the allegations or challenging the designation. Her housing was placed in jeopardy without receiving even the barest minimum procedural protections from the City.[2]

By depriving Ms. Somai and other tenants of notice and an opportunity to be heard, the Ordinance violates her procedural due process rights with respect to her leasehold interest. *See, e.g.*, *Victor Valley Family Res. Ctr. v. City of Hesperia*, Case No. ED CV 16-00903-AB (SPx), 2016 WL 3647340, at *5 (C.D. Cal. July 1, 2016) (entering injunction against a similar ordinance on due process grounds, while finding "the Ordinance concerning because (1) it is unclear whether there is a procedure available for the tenant to contest the findings of the City prior to the initiation of eviction proceedings; and (2) 10 business days appears to be an insufficient amount of time available to the tenant for notice and opportunity to be heard.").

The City's calculated choice to deny due process to the people who face the most harm and who may best respond to the allegations has facilitated the City's capricious and discriminatory application of the Ordinance. Absent due process (or any other meaningful procedural or substantive safeguards), the City can, has, and will use its Ordinance to target at least: 1) people who are victims of crime; 2) people who are accused of criminal activity without any substantiation or verification; and 3) people who are deemed a nuisance based on activity that does not violate any law. *See* Hatch Decl. ¶¶ 15, 18, 19, 22.

Because it lacks even the most basic due process protections, Bedford's Ordinance should be enjoined.

---

[2] The due process afforded by eviction proceedings themselves do not cure this problem, of course, because an eviction *is* the penalty resulting from the nuisance designation. Moreover, many tenants will move rather than contest an eviction in order to avoid the consequences of an eviction filing on their record.

### C. The Other Factors Tip Decisively in Favor of a Preliminary Injunction

The glaring constitutional defects in the Nuisance Ordinance make a preliminary injunction plainly appropriate. "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citation omitted); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (citation omitted). This is particularly true when deprivation of those rights places residents at risk of losing their homes or prevents them from seeking police assistance when facing dangerous situations.

The City has no recognized interest in violating the Constitution or in penalizing requests for police assistance, and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014) (quotation omitted); *see also* Hatch Decl. ¶¶ 24-25, 39-45 Enjoining Bedford's ordinance will further promote public safety by allowing people to report crimes without fear of reprisal, providing law enforcement the information it needs to investigate criminal activity. *Cf. Roviaro v. United States*, 353 U.S. 53, 59 (1957) (recognizing "the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials" and the importance of "encourag[ing] them to perform that obligation"). Failure to enjoin the Ordinance, on the other hand, will send a perilous message to Bedford residents: report crime and risk losing your home.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, to immediately enjoin the City of Bedford from enforcing its Nuisance Ordinance during the pendency of this litigation.

June 18, 2019

/s/ Elizabeth Bonham
Elizabeth Bonham (0093733)
Joseph Mead (0091903)
Freda J. Levenson (0045916)
American Civil Liberties Union of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44103
(614) 586-1958
ebonham@acluohio.org
attyjmead@gmail.com
flevenson@acluohio.org

Sandra S. Park (pro hac vice)
Linda Morris (pro hac vice)
American Civil Liberties Union
Women's Rights Project
125 Broad St. 18th Floor
New York, NY 10004
(212) 519-7871
spark@aclu.org
lindam@aclu.org

*Counsel for all Plaintiffs*

Sara E. Bird (0096545)
Jennifer E. Sheehe (0084249)
The Legal Aid Society of Cleveland
1223 West Sixth Street
Cleveland, Ohio 44113
Ph. (216) 861-5407 – SEB
Ph. (440) 210-4521 – JES
Fax (216) 861-0704
sara.bird@lasclev.org
jsheehe@lasclev.org

*Counsel for Plaintiff Beverley Somai*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2019, I filed a copy of the foregoing Motion and Memorandum in Support using the Court's Electronic Filing System, and that counsel for all parties received electronic notice through that system.

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)
Counsel for Plaintiffs
